IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| TONY LEE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:01cv1430-T |
| MICHAEL HALEY, et al., | ) | (WO) |
| | ) | |
| Defendants. | ) | |

OPINION

Pursuant to 42 U.S.C.A. § 1983, plaintiff Tony Lee
Smith, a former inmate in the Alabama Department of
Corrections (ADOC) system, brought this lawsuit naming
various ADOC employees as defendants and claiming
violations of various constitutional and statutory rights
resulting from prison officials' denial of his requests
for certain religious accommodations to practice Odinism
while he was incarcerated.

In the magistrate judge's original and supplemental recommendations addressing defendants' motions for summary judgment, he recommended that certain defendants be denied qualified immunity on a damages claim for violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. §§ 2000cc through 2000cc-5, and that summary judgment be granted with respect to all other claims.

By judgment entered earlier, the court rejected the magistrate judge's recommendations to the extent he concluded that summary judgment should be denied on the defendants' qualified-immunity defense; the court, instead, entered summary judgment in favor of all defendants in all respects. The court promised that a memorandum opinion would follow. This is the promised opinion.

## I. STANDARDS

The court makes a "de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made." Fed. R. Civ. P. 72(b); see also 28 U.S.C.A. § 636(b)(1). The court "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); see also United States v. Raddatz, 447 U.S. 667, 673-84 (1980).

In addition, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden

then shifts to the non-moving party to demonstrate why summary judgment would not be proper.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56).  The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings.  Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4

## II. BACKGROUND

### A. Facts

Smith is a practitioner of Odinism, an ancient pre-Christian faith whose theology is based on historic Icelandic sagas and runic mysticism.  At the time his lawsuit was filed, he was an inmate in the Limestone Correctional Facility in Capshaw, Alabama.

Smith brings this lawsuit against various ADOC officials, claiming violations of the First and Fourteenth Amendments as enforced through § 1983, as well as violations of RLUIPA.  In his complaint, he seeks $ 500 in damages from each defendant, and injunctive relief requiring that (1) ADOC recognize Odinism as an official religion and (2) defendants allow him to light a small fire or light a candle, wear a Thor's hammer necklace, and  possess a small crystal.

Smith filed this lawsuit on November 21, 2001, after several of his requests for certain religious accommodations were denied by the ADOC Religious Review

Committee.[1]  Around June 16, 2003, while this suit was pending, Smith submitted an additional inmate request to the Religious Review Committee in which, among other things, he again requested the allowance of one small quartz crystal, the use of a ceremonial fire, one religious necklace, and a designated area of worship; Smith explained the religious significance of each requested item and attached written documentation in support of his requests.[2]

An ADOC chaplain then gathered information about Odinism, "researched the credibility" of Smith's requests, and submitted his findings to the Religious Review Committee.[3]  After meeting on October 17, 2003, the committee made a number of findings with respect to Smith's requests; essentially, the committee granted all of Smith's requests but two.

---

1.  Recommendation of magistrate judge (Doc. No. 146), p. 4.

2.  <u>Id</u>.

3.  <u>Id</u>.

First, the committee denied his request to possess a small crystal approximately one inch in diameter. The reason given was that "there is a lack of supporting materials validating a need for this item."[4] Second, the committee denied Smith's request to be allowed a continually designated place of worship to perform these rites; however, the committee added that, "when a secure place of worship is required, the Warden and Chaplain may designate a suitable location for Smith to conduct his rites." Thus, the committee accommodated Smith's request in this regard. The reason given for not continually designating a place of worship was security; the committee indicated that Odinism draws and embraces certain members of the Aryan Nations and Neo-Nazis, which, combined with the prevalence of prison gangs and a hostile inmate population, would be "detrimental to security and a strong potential for harm."[5]

---

4.  Id. at 5.

5.  Id. at 5-6.

Smith was released from prison in January 2004.

### B. Magistrate Judge's Recommendations

#### i. Initial recommendation

The magistrate judge's original recommendation reduced Smith's claims down to one issue: whether Smith is entitled to damages for the ADOC Review Committee's refusal to allow him to possess a crystal.

Smith initially sought both damages and injunctive relief from the defendants.  However, after Smith filed his lawsuit, the Religious Review Committee issued findings (1) granting his request to recognize Odinism as an official religion; (2) determining that the warden and chaplain would designate a place of worship for Smith to conduct his rights when necessary; (3) approving Smith's request to wear a Thor's hammer necklace; and (4) allowing him to light a candle in a private and secure place.[6]

---

6.  ADOC also allowed Smith other religious
(continued...)

Thus, the magistrate judge correctly recommended that this Religious Review Committee decision moots all but one of Smith's claims: his request for injunctive and declaratory relief as well as damages for the ADOC Review Committee's denial of his request for permission to use and possess a small quartz crystal.[7]

The magistrate judge further recognized that Smith's claim for injunctive relief with respect to the crystal is also moot because Smith has already been released from prison.  His release constituted a change in the facts that ended the controversy with respect to injunctive relief for this alleged injury.  Furthermore, his case

_____

6.  (...continued)
accommodations, such as the possession of runes and a fern tree twig.  However, these additional allowances are not relevant to the present suit; in his complaint, Smith requests a court order allowing him only the four things described above.

7.  Id. at 10, citing Los Angeles County v. Davis, 440 U.S. 625 (1979); Cotterall v. Paul, 755 F.2d 777 (11th Cir. 1985).

did not fall into any of the exceptions to the mootness doctrine.[8]

The magistrate judge also recommended that the court grant summary judgment in favor of defendants on Smith's equal-protection claim.  The court agrees.  Smith's equal-protection claim is that defendants violated his

---

8.  These exceptions to the mootness doctrine are a small but important detail the magistrate judge failed to mention in his recommendation.  For example, Smith's suit is not one in which a secondary or "collateral" injury survives even though his primary injury has been resolved, <u>see</u>, <u>e.g.</u>, <u>Sibron v. New York</u>, 392 U.S. 40, 53 (1968); nor do the facts present a case of voluntary cessation.  <u>See</u>, <u>e.g.</u>, <u>Friends of the Earth, Inc. v. Laidlaw</u>, 528 U.S. 167, 173 (2000).  In addition, Smith's injury cannot be categorized as 'capable of repetition, yet evading review,' <u>Roe v. Wade</u>, 410 U.S. 113 (1973), because his injury is not of a type likely to happen <u>to him</u> again.  To satisfy this exception to the mootness doctrine, "there must be a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party."  <u>Murphy v. Hunt</u>, 455 U.S. 478, 482 (1982).  It is unlikely--or at the very least, purely speculative--that Smith will be incarcerated again and subject to the same decision of the same ADOC Religious Review Committee.  <u>See</u> <u>id.</u>, at 483-84 (defendant's challenge to state law denying pretrial bail to those accused of violent sex crimes dismissed as moot after the defendant's conviction, because no likelihood that the defendant would be arrested for a similar offense and denied bail in the future).

right to equal protection by allowing other religious groups (and denying him) the ability to possess religious objects and providing them (and denying him) designated areas to conduct religious activities. The magistrate judge's recommendations suggest that this claim is largely mooted by ADOC's 2003 decision allowing Smith to possess certain religious objects, as well as an area in which to practice his faith. The magistrate judge notes that Smith was not provided with as large a space as that of the Native-American inmates, who are given a 20' x 20' outdoor area to practice certain rituals. However, these inmates require a larger space in which to practice their rituals because there is a large number of them in ADOC facilities; furthermore, the practice of Native-American spirituality is substantially different from that of Odinism. Thus, the magistrate judge correctly concluded that Smith had failed to show that ADOC possessed the

requisite discriminatory intent in denying him an equally
large space.[9]

The magistrate judge also correctly concluded that
defendants' motion for summary judgment with respect to
Smith's suit for damages against the officers in their
<u>official</u> capacities should be granted because a plaintiff
seeking to recover money damages against persons in their
official capacities must look to the government entity
itself.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).[10]
Thus, Smith's claims against the defendants in their
official capacity are barred by the Eleventh Amendment.

Thus, all that remains is Smith's claim for damages
against certain ADOC employees,[11] in their <u>individual</u>

_____

9.  Recommendation of magistrate judge (Doc. No.
146), p. 23.

10.  <u>Id</u>. at 9.

11.  The magistrate judge also recommended granting
summary judgment with respect to Smith's claims against
the ADOC Commissioner and Deputy Commissioner because it
is clear that these defendants are being sued solely
because of their administrative positions, and there is
no respondeat superior or vicarious liability under
(continued...)

capacities, for ADOC's denial of his request to use and possess a small quartz crystal.

### ii. Supplemental recommendation

Defendants filed objections to the magistrate judge's original recommendation, arguing, among other things, that their actions did not violate RLUIPA, and that, regardless, they were entitled to qualified immunity.[12]

The magistrate judge then issued a supplemental recommendation addressing the issue of qualified immunity.[13]    His recommendation concluded that (1) defendants' actions violated RLUIPA, because depriving Smith of a crystal "substantially burdened" the exercise

---

11. (...continued)
§ 1983.   The magistrate is correct about the law; although Smith raised a factual objection to this recommendation, this issue is moot because summary judgment is due to be granted on his damages claim for the crystal, as discussed below.

12. Defendants' objections to recommendation of the magistrate judge (Doc. No. 150), pp. 5-6.

13. Supplemental recommendation of magistrate judge (Doc. No. 151).

of his religion[14] and (2) defendants were not entitled to qualified immunity because the law was clearly established at the time of their actions.

In reaching this second conclusion, the magistrate judge reasoned that, at the time defendants denied Smith's request for a crystal in 2003, RLUIPA, which was enacted on September 22, 2000, had been in existence for over three years.  He further noted that, "Although three years had passed since the enactment of the statute, there is no showing that the defendants in any way attempted to apply RLUIPA when deciding to deny Smith's request for a small crystal."[15]

Consequently, the magistrate judge concluded that defendants' motion for summary judgment on the basis of qualified immunity with respect to Smith's RLUIPA claim

_____

14.  The magistrate judge actually made this finding in his initial recommendation (Doc. No. 146), pp. 18-20. In his supplemental recommendation (Doc. No. 151), he addressed solely the issue of whether the law was clearly established at the time of the defendants' actions.

15.  Supplemental recommendation of magistrate judge (Doc. No. 151), p. 4.

should be denied because "they have provided no evidence
that their actions were consistent with clearly
established law."[16]

Defendants then filed an additional set of objections
to the magistrate judge's supplemental recommendation,
again arguing they were entitled to qualified immunity.[17]
Smith also filed several objections.[18]

---

16. Id.

17. Defendants' objections to supplemental
recommendation of magistrate judge (Doc. No. 152).

18. Plaintiff's objection to supplemental
recommendation of magistrate judge (Doc. No. 155). Smith
objected to the court's dismissal of his claims against
the ADCO Deputy Commissioner and Commissioner; as
discussed above, these objections are rendered moot by
this court's conclusion that summary judgment is due to
be granted on all of Smith's claims.

Smith's objections further state that, "For the
record, Plaintiff reiterates that during this litigation,
he asked to bring additional claims that transpired after
the initial complaint was filed...." Id. at 1-2.
However, the court cannot locate any motion by Smith to
amend his complaint in the record of this case. Because
Smith never formally requested nor received permission to
add these additional claims to his lawsuit, the court
finds it unnecessary to address the claims.

For the following reasons, the court disagrees with the magistrate judge's analysis on the issue of qualified immunity.

### III. QUALIFIED IMMUNITY

#### A. Applicability to RLUIPA Claim

To be sure, a threshold issue is whether the doctrine of qualified immunity even applies to a RLUIPA claim. But imbedded in that issue is another one, which, unfortunately, neither the magistrate judge nor the parties addressed: whether there is even individual liability for damages (that is, damages liability against government employees in their individual capacities) under RLUIPA. Cf. Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996) (Americans with Disabilities Act, 42 U.S.C.A. §§ 12101-12213, does not provide for individual liability); Busby v. City of Orlando, 931 F.2d 764, 772 (11th Cir.1991) (no individual liability under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A.

§§ 1981a, 2000e through 2000e-17); <u>Smith v. Capitol City</u> <u>Club of Montgomery</u>, 850 F. Supp. 976, 978 (M.D. Ala. 1994) (Thompson, J.) (same).   Absent liability for damages in their individual capacities, there is no need for government employees to raise, and thus for the court to address, the qualified-immunity defense.

RLUIPA reads, in relevant part, that:

> "<u>No government</u> shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest."

42 U.S.C.A. § 2000cc-1(a) (emphasis added).   The statute further provides that, "A person may assert a violation of this chapter as a claim or defense in a judicial

proceeding and obtain appropriate relief against <u>a</u> <u>government</u>." 42 U.S.C.A. § 2000cc-2(a) (emphasis added).

Thus, the statute's proscriptive language addresses conduct by "government," not individuals, and, similarly, the statute's relief provision provides for judicial relief against "a government," not individuals.

Admittedly, RLUIP defines "government" as not only "a State, county, municipality, or other governmental entity created under the authority of a State," 42 U.S.C.A. § 2000cc-5(4)(A)(i), but also an "official of [such] entity" and "any other person acting under color of State law." 42 U.S.C.A. § 2000cc-5(4)(A)(ii) & (iii). However, because the term at issue is "government," the definitional words "official" and "other person acting under color of State law" could be reasonably read, and understood, to make clear that such person's actions would make the government for which he worked liable under RLUIP, and thus the words could be read to mean that such person could be sued in his official, and not

18

necessarily individual, capacity. Because there is simply nothing in the statute that clearly suggests that government employees can be liable for damages in their individual capacities, the court doubts that RLUIP provides for such. But see Orafan v. Goord, 2003 WL 21972735, *10 (N.D. N.Y. 2003) (Treece, M.J.) (holding that RLUIP allows officials to be sued for damages in their individual capacities).

However, because the parties did not raise and brief the issue of whether RLUIP provides for damages liability against government employees in their individual capacities and because, even it does, Smith cannot recover from defendants in their individual capacities, the court will assume that the statute does provide for such liability.

The court therefore turns the initial question of whether the doctrine of qualified immunity applies to RLUIPA claims. Because the Supreme Court has held that "government officials ... are shielded from liability for

19

civil damages insofar as their conduct does not violate clearly established <u>statutory</u> or <u>constitutional</u> rights," <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982) (emphasis added), this court concludes that the doctrine applies to RLUIP as well.  <u>See</u>, <u>e.g.</u>, <u>Hale O Kaula Church v. Maui Planning Comm'n</u>, 229 F.Supp.2d 1056 (D. Hawai'i 2002) (S.P. King, J.) (defendant entitled to qualified immunity on RLUIPA claim); <u>Charles v. Verhagen</u>, 220 F.Supp.2d 937 (W.D. Wisc. 2002) (Crabb, J.) (officials violated RLUIPA but entitled to qualified immunity because they did not violate a "clearly established" right); <u>Williams v. Bitner</u>, 359 F.Supp.2d 370 (M.D. Pa. 2005) (Conner, J.) (defendants not entitled to qualified immunity on RLUIPA claim because law was clearly established regarding a Muslim inmate's religious beliefs regarding prohibitions on the handling of pork).

The next question is thus whether defendants in this case are entitled to qualified immunity.

## B. Qualified-Immunity Analysis

In order to be entitled to qualified immunity, a public-official defendant must first prove that he was acting within the scope of his discretionary authority at the time of the allegedly unconstitutional conduct. <u>Lee v. Ferraro</u>, 284 F.3d 1188 1192 (11th Cir. 2002). Once this has been established, the court must undertake the two-pronged inquiry outlined in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001). Under the <u>Saucier</u> framework, the court must first determine whether the facts alleged, taken in the light most favorable to plaintiff, demonstrate that the official's conduct violated a statutory right. If so, the next inquiry becomes whether that right was clearly established in light of the specific context of the case. <u>Saucier</u>, 533 U.S. at 201; <u>see also</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194 (2004).

It is undisputed that defendants in this case were acting within the scope of their discretionary authority;

thus, the court must next employ the two-part <u>Saucier</u> inquiry.

### i. Violation of a right

The first question is whether defendants' conduct violated Smith's right under RLUIPA. By requiring that a government's restrictions on religious practice be justified by "a compelling governmental interest," 42 U.S.C.A. § 2000cc-1(a)(1), RLUIPA affords prisoners engaged in religious conduct federal statutory protections greater than those afforded by the First Amendment under current free-exercise case law.[19] <u>Charles</u>, 220 F.Supp.2d at 942.

---

19. RLUIPA was enacted after the Supreme Court invalidated the Religious Freedom Restoration Act, which was enacted in response to <u>Employment Div., Dept. of Human Resources of Oregon v. Smith</u>, 494 U.S. 872 (1990). <u>Smith</u> held that neutral, generally applicable, laws "may be applied to religious practices even when not supported by a compelling governmental interest." <u>City of Boerne v. Flores</u>, 521 U.S. 507, 514 (1997). Because RLUIPA essentially reinstates the strict-scrutiny analysis eviscerated by <u>Smith</u>, a prisoner's rights are more expansive under RLUIPA than under the First Amendment.

In his initial recommendation, the magistrate judge concluded that defendants had violated RLUIPA by denying Smith his request to use and possess a small crystal. Applying the Eleventh Circuit's definition of "substantial burden"[20] as "akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly," <u>Midrash Sephardi, Inc. v. Town of Surfside</u>, 366 F.3d 1214, 1227 (11th Cir. 2004), the magistrate judge concluded that the ADOC Religious Review Committee had substantially burdened Smith by its actions with respect to the crystal. In doing so, he accepted Smith's allegation that the use of a crystal is fundamental to his practice of Odinism because "without [a crystal], meditation and prayer are rendered impossible, much like a telephone without a

---

20. RLUIPA's legislative history indicates that the term "substantial burden" as employed in the statute should be interpreted by reference to Supreme Court jurisprudence. S. Rep. No. S7776 (July 27, 2000). Thus, the magistrate judge correctly discussed the changing definition of "substantial burden" in Supreme Court and Eleventh Circuit case law before settling on the definition he employed.

receiver."[21]    Thus,   the   magistrate   judge   found   that depriving Smith of a crystal essentially forced him to refrain from practicing his religion, as he could not pray or meditate without it.[22]

The magistrate judge further held that ADOC failed to provide   a   compelling   governmental   interest   for   its decision to deny Smith permission to use a crystal; the record indicates that the reason for denial was simply the "lack of supporting evidentiary materials validating a need for this item."[23]

The court accepts this conclusion for the purposes of analysis.

_____

21. Recommendation  of  magistrate  judge (Doc.  No. 146), p. 19.

22. Id.

23. Id. at 20.

### ii. Clearly established law

Assuming that defendants did violate Smith's right under RLUIPA, the next inquiry is whether that right was clearly established under existing law at the time of the violation.

Qualified immunity shields government officials from suit when they make decisions that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances they confronted. Brosseau v. Haugen, 543 U.S. 194, ___, 125 S.Ct. 596, 599 (2004). Because the qualified-immunity inquiry focuses on whether the officials had fair notice of the unlawfulness of their conduct, the court must examine the officials' reasonableness at the time of the alleged conduct. Only if the law at that time clearly established that the alleged conduct violated Smith's statutory rights, are defendants liable for their conduct. Id.

In making this determination, "the relevant, dispositive inquiry ... is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202. The Supreme Court recently emphasized that this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Brosseau</u>, 543 U.S. at ___, 125 S. Ct. at 599 (quoting <u>Saucier</u>, 533 U.S. at 201). The court must therefore inquire whether, at the time of defendants' alleged actions, it was "clearly established" in the more "particularized" sense that they were violating Smith's statutory right. <u>Id</u>.

Thus, the magistrate judge's analysis that Smith's rights under RLUIPA were clearly established in 2003 because RLUIPA was enacted in 2000 is flawed. His reasoning assumes that the operative question is simply the date of the enactment of RLUIPA. However, concluding that defendants violated clearly established law by denying Smith possession of a crystal in 2003 because

26

RLUIPA was enacted in 2000 is akin to concluding that a police officer violated the Fourth Amendment rights of a suspect by using force during an arrest in 2005 because the Fourth Amendment was ratified in 1771.

It is clear from qualified-immunity case law in Fourth Amendment and other constitutional contexts that the operative question is not the date on which the law in question was enacted, but rather whether the <u>contours</u> of plaintiff's rights <u>under that law</u> were sufficiently clear at the time the conduct occurred.  <u>Saucier</u>, 533 U.S. at 202.  In other words, the issue is whether it would be clear to reasonable prison officials that depriving an inmate of a crystal to practice Odinism violated his statutory right under RLUIPA in 2003.[24]

_____

24. While the magistrate judge is correct that defendants should have known about and employed the test set out in RLUIPA for determining whether refusing Smith possession of a crystal violated his right, the fact that they failed to do so does not necessarily mean that they are precluded from availing themselves of qualified immunity.  Even if they had employed the test set forth in RLUIPA, they may have reached the same decision to deny Smith possession of the crystal.  In short, as long
(continued...)

The court was unable to locate any case specifically indicating that refusing to provide a practitioner of Odinism with a crystal for religious purposes violates RLUIPA.  In fact, a search of all federal case law for opinions containing the two words "Odinism" and "crystal" turned up zero results.  In addition, it is significant that the court could not locate any other RLUIPA case brought by prisoner practitioners of Odinism that references a request to use and possess a crystal, much less concludes that depriving an Odinist possession of a crystal violates his rights under RLUIPA.  <u>See</u>, <u>e.g.</u>, <u>Lindell v. Frank</u>, 2003 WL 23198509 (W.D. Wis.) (Crabb,

_____

24. (...continued)
as their decision to deny Smith possession of the crystal was not contrary to clearly established law, defendants are entitled to qualified immunity.

Furthermore, the fact that defendants denied Smith's request based on the purported lack of supporting evidentiary materials does not necessarily indicate they failed to employ the rubric of RLUIPA.  For example, defendants may have concluded that, based on the lack of materials provided by Smith, a crystal was not essential to the practice of his religion, and that therefore, denying him possession of one would not substantially burden his exercise of Odinism under RLUIPA.

J.) (Odinist defendant alleging violations of RLUIPA
based on refusal of prison officials to provide writing
paper claimed necessary to write and draw religious
poetry and "spellcraft," and to allow telephone access to
spiritual adviser, among other things); <u>Rust v. Clarke</u>,
883 F.Supp. 1293 (D. Neb. 1995) (Kopf, J.) (Odinist state
inmates allege violations of RLUIPA based on denial of
request for numerous religious items, including Thor's
hammer necklace, an evergreen tree, a cauldron, a small
stone altar, an ash spear, a drinking horn, viking-type
swords, meats for ritual, etc.); <u>Borzych v. Frank</u>, 340
F.Supp.2d 955 (W.D. Wis. 2004) (Crabb, J.) (allegations
of RLUIPA violations based on denial of request to
possess Odinist texts).

Furthermore, a more general search of case law
regarding religion and spiritual practice and the use of
crystals turned up nothing.  In short, the court could
not locate any cases suggesting that it is clearly
established under <u>any</u> law--be it RLUIPA or the First

Amendment--that the refusal to allow a prisoner a crystal or other prayer conduit for religious purposes violates his statutory or constitutional rights.

Finally, this is not an "obvious case" where a constitutional violation can be "clearly established" even without a body of relevant case law. See Hope v. Pelzer, 536 U.S. 730, 740 (2002) (holding that the appropriate qualified-immunity inquiry is whether relevant case law "gave reasonable warning that the conduct then at issue violated constitutional rights," regardless of whether the facts of prior cases are "materially similar"). This is particularly true given the relative obscurity of Odinism as a religion, as well as the fact that questions regarding the free exercise of religion are often presented with "fluid precedent." Messiah Baptist Church v. County of Jefferson, 859 F.2d 820, 824 (10th Cir. 1988). As the Eleventh Circuit has observed, "[i]nterpretation and application of the free exercise clause has created, within that field of

30

constitutional doctrine, areas dotted by unanswered questions." <u>Grosz v. City of Miami Beach, Fla.</u>, 721 F.2d 729, 733 (11th Cir. 1983). Therefore, it is impossible to conclude that it should have been "obvious" to prison officials that refusing to allow Smith a crystal to practice Odinism violated his statutory (or constitutional) rights.

Thus, even if defendants' refusal to allow Smith to possess a crystal violated his right under RLUIPA, defendants are entitled to qualified immunity because Smith's right to possess a crystal as part of his practice of Odinism was <u>not</u> clearly established by any law at the time of the actions in question.


## IV. CONCLUSION

Based on the foregoing, the court concludes that the magistrate judge erred in his recommendations that Smith's claim for damages for denial of possession of a crystal proceed to trial. The court agrees with the

31

magistrate judge's recommendations with respect to the other claims. Defendants are entitled to summary judgment on all claims.

An appropriate judgment has already been entered.

DONE, this the 1st day of December, 2005.


　　　　　　　 /s/ Myron H. Thompson
　　　　　　 UNITED STATES DISTRICT JUDGE